FILED - USDC -NH
2026 APR 2 AM11:39

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| **Stephanie A. Lawlor,** Individually and as Administrator of the Estate of **Tyler Matthew Melanson,** <br><br> Plaintiff, <br><br> v. <br><br> **City of Keene;** **Officer Steven J. Corrigan, individually;** **Officer Michael D. O'Donnell, individually;** **Officer Scott Merrell, individually;** **Lieutenant Joel Chidester, individually; and** **John/Jane Doe Officers and Supervisors 1-10, individually,** <br><br> Defendants. | Civil Action No. _____ <br><br> **COMPLAINT FOR DAMAGES AND JURY DEMAND** |

Plaintiff Stephanie A. Lawlor, individually and as Administrator of the Estate of Tyler Matthew Melanson, for her Complaint against Defendants, alleges as follows:

## I. NATURE OF THE ACTION

1. This is a civil-rights action under 42 U.S.C. § 1983 seeking redress for the deprivation of rights secured by the Fourteenth Amendment to the United States Constitution.

2. This action arises from Keene Police contacts with Tyler Matthew Melanson on October 2–3, 2025, during an acute mental-health crisis, at a time when police had actual notice that Tyler had expressed suicidal thoughts, felt out of control, and had access to a firearm in his home, and from the subsequent handling of the November 7, 2025 death investigation.

3. Plaintiff does not concede the official classification of Tyler Matthew Melanson's death as suicide and expressly reserves all rights to challenge the cause and manner of death.

- 1 -

4. Plaintiff pleads in the alternative that, regardless of the ultimate cause or manner-of-death determination, Defendants had prior actual notice of a specific and potentially lethal danger and failed to take constitutionally adequate action to address that danger.

5. Plaintiff alleges that Defendants, acting under color of state law, affirmatively increased, prolonged, rendered more acute, or failed to meaningfully abate a known and immediate firearm-related danger to Tyler, and thereafter handled the death investigation in a manner supporting an inference of deliberate indifference, ratification, inadequate supervision, or municipal tolerance of constitutionally deficient practices.

6. Plaintiff further alleges that Defendant City of Keene is liable because the constitutional violations described herein were caused by one or more municipal customs, policies, practices, failures to train, failures to supervise, failures to review, and failures to discipline, under circumstances where the need for proper intervention in suicidal-person and firearm-risk encounters was obvious and the risk of constitutional injury was substantial.

## II. JURISDICTION AND VENUE

7. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

8. This Court has supplemental jurisdiction over related state-law claims, to the extent later pleaded, under 28 U.S.C. § 1367.

9. Venue is proper in the District of New Hampshire under 28 U.S.C. § 1391(b) because all or a substantial part of the events or omissions giving rise to these claims occurred in Keene, Cheshire County, New Hampshire, within this District.

## III. PARTIES

10. Plaintiff Stephanie A. Lawlor is an adult resident of Keene, New Hampshire and is the mother of Tyler Matthew Melanson.

11. Plaintiff brings this action individually and as duly appointed Administrator of the Estate of Tyler Matthew Melanson.

12. Decedent Tyler Matthew Melanson was born on July 16, 1997, resided at 47 Davis Street, Apartment 2, Keene, New Hampshire, and was employed at Cheshire Medical Center.

13. Defendant City of Keene is a municipal corporation organized under the laws of the State of New Hampshire and is responsible for the customs, policies, training, supervision, review, and discipline of the Keene Police Department and its officers.

14. Defendant Officer Steven J. Corrigan was at all relevant times a police officer employed by the City of Keene and acting under color of state law. Plaintiff sues him in his individual capacity.

15. Defendant Officer Michael D. O'Donnell was at all relevant times a police officer employed by the City of Keene and acting under color of state law. Plaintiff sues him in his individual capacity.

16. Defendant Officer Scott Merrell was at all relevant times a police officer employed by the City of Keene and acting under color of state law. Plaintiff sues him in his individual capacity.

17. Defendant Lieutenant Joel Chidester was at all relevant times a supervising officer employed by the City of Keene and acting under color of state law. Plaintiff sues him in his individual capacity.

18. Defendants John/Jane Doe Officers and Supervisors 1–10 are persons presently unknown who participated in, directed, approved, concealed, ratified, reviewed, or failed to correct the conduct described herein. Their true identities will be substituted when discovered.

## IV. FACTUAL ALLEGATIONS

19. On October 2, 2025, at approximately 1:12 p.m., Plaintiff called the Keene Police Department and requested a welfare check on Tyler at 47 Davis Street, Apartment 2.

20. The October 2 daytime call sheet reflects Plaintiff reported that Tyler had texted her that morning, that she believed he was delusional, buying things from Corner News, smoking an unknown substance, leaving his cat in his apartment, and that "He isn't safe."

21. Officer Steven J. Corrigan responded to that daytime welfare check.

22. Corrigan documented that Tyler was "clearly suffering from some mental health issues," that he "knows he needs help," and that he "does not trust anyone in Keene."

23. Corrigan further documented that he offered to take Tyler to the hospital or to Monadnock Family Services, but Tyler did not accept immediate transport during that encounter and stated that he did not want to hurt himself or anyone else.

24. Later that same night, at approximately 11:36 p.m. on October 2, 2025, Keene Police received a 911 call classified as "SUICIDE ATTEMPT OR THREAT" at 47 Davis Street, Apartment 2.

25. The late-night call sheet states: "subj named tyler having thoughts of suicide. subj has a firearm in the home."

26. The same late-night call sheet further records, in substance, that Tyler reported he had a split-personality issue, that one of them was violent, that he currently felt out of control, that he was home alone, and that police were transporting him to Cheshire Medical Center.

- 4 -

27. Officer Michael D. O'Donnell documented that "Melanson called the PD stating he was having suicidal thoughts and that he has split personality disorder. Melanson was cooperative and requested a ride to the hospital. He was transported without incident."

28. Thus, by the time of the October 2–3 intervention, Keene Police had actual notice that Tyler was in acute psychological distress, had expressed suicidal thoughts, felt out of control, and had access to a firearm in his residence.

29. The danger at issue was not generalized or speculative. It was specific, immediate, and lethal: acute psychological instability combined with known access to a firearm in Tyler's home.

30. Upon information and belief, Defendants did more than merely fail to protect Tyler from a preexisting danger. After intervening in his crisis and acquiring actual notice of the firearm-related risk, Defendants failed to take constitutionally adequate steps to separate Tyler from that known lethal means, failed to pursue available emergency protective intervention, and handled the encounter in a manner that left Tyler exposed to the same firearm later involved in his death.

31. Upon information and belief, Defendants failed to take constitutionally adequate action after learning that Tyler had expressed suicidal thoughts, felt out of control, and had access to a firearm in his home, and that same firearm was later involved in his death under circumstances that remain disputed.

32. Upon information and belief, by intervening in Tyler's crisis without neutralizing or meaningfully addressing the firearm-related danger, Defendants increased, prolonged, rendered more acute, or failed to abate a known and immediate risk of fatal harm.

33. The lapse of time between the October 2–3, 2025 police contacts and Tyler's death did not eliminate the specific danger Defendants had identified, namely the combination of acute psychological instability and known access to the same firearm later involved in his death.

34. On November 7, 2025, after Tyler had not shown up to work for several days, Keene Police received another call concerning Tyler at 47 Davis Street.

35. The November 7 call sheet reflects the call was entered at 13:53 as a "DECEASED PERSON" call.

36. The same November 7 call sheet further records, in substance, that Cheshire Medical Center security requested a welfare check on Tyler because he had not shown up to work in several days and that, upon entry, officers observed a "male on the bed with gun in his hand."

37. The related incident report identifies Reporting Officer Scott Merrell and Approving Officer Lieutenant Joel Chidester and states that, on the same date, the matter was placed in "Incident Investigation Suspended" status, with the stated reason "No more leads."

38. Upon information and belief, Merrell, Chidester, and other involved supervisory or responding personnel participated in, approved, reviewed, ratified, or failed to correct the handling of the November 7 death investigation.

39. The same-day suspension of the investigation, particularly in light of Defendants' prior actual notice of Tyler's October 2–3 mental-health crisis and firearm access, supports an inference of inadequate supervisory review, ratification, deliberate indifference, conscious disregard, or municipal tolerance of constitutionally deficient practices.

40. At all relevant times, the City of Keene was responsible for establishing and enforcing policies, training, supervision, documentation standards, escalation procedures, and

review mechanisms for officers responding to welfare checks, suicidal-person calls, mental-health crises, and firearm-risk encounters.

41. The need for proper training and supervision in suicidal-person and firearm-risk encounters is obvious because such encounters present a high and predictable risk of death.

42. Upon information and belief, the City of Keene maintained customs, practices, or failures in training and supervision that resulted in officers inadequately assessing risk, inadequately using available intervention authority, inadequately addressing firearm access, inadequately documenting and communicating the seriousness of such cases, and inadequately reviewing or escalating such incidents afterward.

43. Upon information and belief, supervisory personnel approved, ratified, tolerated, or failed to correct the conduct described above, including the handling of the October 2–3 crisis and the November 7 death investigation.

44. Plaintiff expressly reserves the right to amend this pleading as discovery, expert review, forensic evidence, dispatch materials, body-worn-camera evidence, hospital records, and unredacted police documents further clarify the events of October 2–3, 2025 and the true cause and manner of Tyler's death.

## V. CLAIMS FOR RELIEF

### COUNT I

### 42 U.S.C. § 1983 – Fourteenth Amendment Substantive Due Process / State-Created Danger

### (Against Individual Defendants)

45. Plaintiff incorporates by reference Paragraphs 1 through 44 as though fully set forth herein.

46. At all relevant times, the individual Defendants acted under color of state law.

47. The Due Process Clause of the Fourteenth Amendment forbids conscience-shocking executive conduct and, in limited circumstances, permits liability where state actors affirmatively create, enhance, prolong, or render more acute a known danger to a specific person.

48. Defendants had prior actual notice that Tyler was experiencing acute psychological distress, had expressed suicidal thoughts, felt out of control, and had access to a firearm in his home.

49. After intervening in Tyler's crisis with that knowledge, Defendants affirmatively handled the encounter in a manner that left Tyler exposed to the same known lethal means without taking constitutionally adequate steps to separate him from the firearm, neutralize that danger, or pursue available emergency protective intervention.

50. By their acts and omissions, Defendants created, increased, prolonged, rendered more acute, or failed to meaningfully abate the danger to Tyler and left him more vulnerable to fatal harm from the same firearm later involved in his death.

51. In light of the obvious lethality of the risk, Defendants' conduct constituted more than negligence or poor judgment and amounted to deliberate indifference to Tyler's life and bodily security, shocking the conscience within the meaning of the Fourteenth Amendment.

52. As a direct and proximate result of Defendants' conduct, Tyler Matthew Melanson suffered fatal injury and related damages recoverable by Plaintiff and the Estate.

## COUNT II
### 42 U.S.C. § 1983 – Fourteenth Amendment Substantive Due Process (Pleaded in the Alternative)
### (Against Individual Defendants)

53. Plaintiff incorporates by reference Paragraphs 1 through 52 as though fully set forth herein.

54. Plaintiff does not concede that Tyler's death was properly classified as suicide and alleges that the adequacy, integrity, and completeness of the post-death investigation remain in serious dispute.

55. In the alternative, if Defendants contend Tyler's death was self-inflicted, Defendants had prior actual notice on October 2–3, 2025 that Tyler had expressed suicidal thoughts, felt out of control, and had access to the same firearm later involved in his death, yet failed to take constitutionally adequate protective action despite the obvious and foreseeable risk of fatal harm.

56. Defendants' conduct went beyond negligence and constituted deliberate indifference to a known and specific risk of death.

57. As a direct and proximate result of that conduct, Tyler died and Plaintiff and the Estate suffered the damages alleged herein.

## COUNT III
### 42 U.S.C. § 1983 – Municipal Liability (Monell)
### (Against Defendant City of Keene)

58. Plaintiff incorporates by reference Paragraphs 1 through 57 as though fully set forth herein.

59. The constitutional violations committed against Tyler were caused by one or more policies, customs, practices, or deliberately indifferent failures attributable to the City of Keene, including inadequate training, supervision, and review regarding: suicidal-person responses; encounters involving persons in acute psychiatric crisis with access to firearms; use of available emergency intervention mechanisms; documentation and communication

of firearm-related suicide risk; and supervisory review and follow-up after high-risk mental-health encounters.

60. The need for adequate training and supervision in mental-health and suicidality encounters involving firearms was obvious because such encounters present a high and predictable risk of death.

61. The City, through policymakers and supervisors, was deliberately indifferent to that obvious need.

62. Upon information and belief, the City further ratified or tolerated the unconstitutional conduct described herein by failing to require adequate review, corrective action, retraining, or discipline after the October 2–3 encounters and by permitting the November 7, 2025 death investigation to be suspended the same day despite the obvious need for fuller inquiry.

63. As a direct and proximate result of the City's policies, customs, practices, and deliberate indifference, Tyler suffered fatal injury and Plaintiff and the Estate suffered the damages alleged herein.

## VI. DAMAGES

64. As a direct and proximate result of Defendants' acts and omissions, Plaintiff and the Estate have sustained damages including but not limited to loss of life; conscious pain and suffering, to the extent proven; emotional distress and related compensable losses as permitted by law; funeral, estate, and related economic damages as permitted by law; and other damages recoverable under federal and supplemental law.

65. The conduct of the individual Defendants was willful, wanton, malicious, reckless, or in callous disregard of Tyler's federally protected rights, warranting punitive damages against the individual Defendants.

## VII. PRAYER FOR RELIEF

66. Enter judgment in favor of Plaintiff and against Defendants;

67. Declare that Defendants violated Tyler Matthew Melanson's rights under the Fourteenth Amendment and 42 U.S.C. § 1983;

68. Award compensatory damages in an amount to be determined by the jury;

69. Award punitive damages against the individual Defendants in an amount to be determined by the jury;

70. Award costs and reasonable attorney's fees as permitted by law, including under 42 U.S.C. § 1988;

71. Award pre-judgment and post-judgment interest as allowed by law; and

72. Grant such other and further relief as this Court deems just and proper.

## VIII. JURY DEMAND

73. Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,
Stephanie A. Lawlor
Individually and as Administrator of the Estate of Tyler Matthew Melanson
33 Colorado Street, Apt. 1
Keene, NH 03431
(603) 852-8435
Stephanielawlor@rocketmail.com

Dated: *Stephanie Lawlor*
April 2, 2026

- 11 -